**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FRED WAGNER,                     :
                                 :        **Civil Action No. 1:04-CV-1133**
              **Plaintiff**        :
                                 :
v.                               :        **(Judge Kane)**
                                 :
TUSCARORA SCHOOL DISTRICT,       :
<u>et</u> <u>al.</u>,                       :
                                 :
              **Defendants.**      :

<u>**MEMORANDUM AND ORDER**</u>

Pending before the Court are cross-motions for summary judgment filed by Plaintiff and

Defendants.  (Doc. Nos. 52 and 54.)  The motions have been fully briefed and are ripe for

disposition.  For the reasons that follow, the Court finds that Defendants have demonstrated that

no issues of material fact remain that warrant a trial.  Accordingly, the Court will grant

Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and

direct the Clerk of Court to enter judgment in favor of Defendants.[1]

**I.      Procedural Background**

In the Second Amended Complaint (Doc. No. 33), Plaintiff alleges that Defendants

conspired to terminate his employment as a tenured band teacher and band director at James

Buchanan High School in the Tuscarora School District.  Specifically Plaintiff alleges that

Defendant Beaumont, the Principal of James Buchanan High School, harbored a personal dislike

for Plaintiff and that Defendant Board Members hired Defendant Stapleford as Superintendent

on the condition he terminate Plaintiff.  (<u>Id.</u> at 6, 9.)  Plaintiff claims that Defendant Board

---

[1]        In addition to the foregoing motions for summary judgment, the parties have filed
a number of pretrial motions that will be denied as moot.

Members met with Defendant Stapleford for the purpose of planning a course of action to suspend and/or terminate Plaintiff's employment. (<u>Id.</u> at 9.)  Plaintiff also alleges that Defendants falsely accused him of receiving kickbacks and of sexually harassing students. (<u>Id.</u> at 10, 11-13.)  Plaintiff alleges he was suspended without pay on August 12, 2003, and was allegedly told by Stapleford that "[he] had 24 hours to resign, or else he would be terminated." (<u>Id.</u> at 13.)  Plaintiff claims he was suspended without notice or the opportunity to respond to the allegations against him. (<u>Id.</u>)  In addition, Plaintiff alleges that Superintendent Stapleford and Principal Beaumont contacted local newspapers, which subsequently reported that Plaintiff was accused of sexually harassing students. (<u>Id.</u> at 14.)

Defendants subsequently moved to partially dismiss the claims against them for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 35.)  By Order dated September 21, 2005, the Court granted the motion in part and denied the motion in part. (Doc. No. 45.)  Following the Order, the following claims remained against the Defendants: procedural due process claims against Defendants Stapleford, the Tuscarora School District, and School Board (Counts I, II); a civil conspiracy claim against Defendants Beaumont, Stapleford, Jane Rice, Michael Rice, Geoffrey Spidel, Darla Tharp, and Keith Smith (Count III); a claim for defamation against Defendants Stapleford and Beaumont (Count IV); a claim of tortious interference with contractual relations against all individual Defendants (Count V); and a breach of contract claim against Defendant School District and the School Board (Count IV).

Plaintiff and Defendants have now filed cross-motions for summary judgment as to all of the claims.

II.     **Factual Background**[2]

Plaintiff was a band teacher and band director at James Buchanan High School in the

Tuscarora School District ("District") for approximately twenty years.  While employed in that

capacity, Plaintiff was a member of a teacher's union, the Tuscarora Education Association, and

the terms of his employment were governed by a collective bargaining agreement between the

teacher's union and the District.  The terms of the collective bargaining agreement provide, <u>inter</u>

<u>alia</u>, that Plaintiff could only be terminated for just cause.  Plaintiff also enjoyed tenure status

and, accordingly, he could be terminated only for just cause pursuant to 24 P.S. § 11-1122 and §

11-1133.  Prior to August 12, 2003, Plaintiff had never been suspended or subject to other

disciplinary action and had received generally favorable reviews.

Defendant Dr. Thomas A. Stapleford assumed the position as Superintendent of the

District on July 1, 2003.  On his first day on the job, Defendant Stapleford met with Defendant

Robert Beaumont, the principal of the School, and with Defendant Darla Tharp, the orchestra

teacher at the School.  During this meeting, Defendant Tharp formally complained to Defendant

Stapleford that Defendant had sexually harassed her in the workplace on numerous occasions.

At some point during the summer of 2003, a student of the High School complained to

---

[2]     The following facts relevant to this action are taken from the parties' statements
of undisputed facts, filed in connection with their motions for summary judgment and, where
appropriate, from the second amended complaint.  The Court notes Plaintiff's failure to comply
with Local Rule 56.1, which requires that a party moving for summary judgment include a
concise statement of facts about which it is contended there is no dispute, together with citation
to evidence of record supporting the asserted facts.  <u>See</u> L.R. 56.1.  Plaintiff belatedly corrected
this omission.  Defendants have contended that Plaintiff's failure to comply with the procedural
rules has caused them prejudice, and argue Plaintiff's motion for summary judgment should be
dismissed as a result.  The Court finds it unnecessary to address these arguments, because the
Court has found following review of both parties' submissions that summary judgment in favor
of Defendants is warranted on the merits.

Defendant Stapleford that Plaintiff had touched her inappropriately.  The student's mother also complained to Defendant Stapleford about the matter.

As a result of the foregoing complaints against Plaintiff, along with additional information Defendant Stapleford had received regarding complaints from other students, Defendant Stapleford determined that the charges should be investigated and that Plaintiff should be suspended promptly from his teaching duties.  Additionally, following consultation with the District's legal counsel, Dr. Stapleford concluded that the student's allegations that Plaintiff had touched her inappropriately must be provided to law enforcement authorities.

In August 2003, Defendant Stapleford contacted representatives of the Tuscarora Education Association to inform them about Defendant Tharp's allegations and about the student's complaint regarding Plaintiff's conduct, and to advise them that he would be meeting with Plaintiff to discuss disciplinary proceedings.  These representatives were also asked to be present during Dr. Stapleford's planned meeting with Plaintiff to discuss the allegations and present Plaintiff with options regarding his continued employment.  Defendant Stapleford attested that he believed the situation required delicacy, given the seriousness of the allegations, and because both Defendant Tharp and Plaintiff had rights that required protection.

On August 12, 2003, Defendant Stapleford's office contacted Plaintiff and directed that he report to Defendant Stapleford's office for a meeting.  Plaintiff was not advised of Defendant Sharp's allegations prior to this communication, nor was he informed as to the nature of the meeting.

On August 12, 2003, Plaintiff reported to Defendant Stapleford's office, where he met with Defendant Stapleford and two representatives from the Tuscarora Education Association,

Marcia Bender and LeeAnn Witter-Keefer.  During this meeting, Defendant Stapleford informed Plaintiff that he had been accused by a District employee of sexual harassment and that the charges were serious.  Defendant Stapleford also advised Plaintiff that he had received information that Plaintiff had allegedly touched multiple students in an inappropriate manner. Defendant Stapleford offered Plaintiff an opportunity to answer the charges, but would not provide Plaintiff with the names of his accusers.  Plaintiff denied the charges generally and expressed shock.  Defendant Stapleford informed Plaintiff that he could resign his position with the District or face termination.  Defendant Stapleford also advised Plaintiff that if he did not resign he would be placed on administrative leave and that he should not report for work at the beginning of the school year, which was to commence shortly.

By letter dated August 14, 2003, Plaintiff's newly-retained counsel notified the District that Plaintiff would agree voluntarily to be placed on administrative leave pending the criminal investigation into the student's allegations that Plaintiff had touched her inappropriately.  It appears from the evidence submitted by the parties that Plaintiff was thereafter immediately placed on administrative leave without pay, and that members of the School Board unanimously accepted this placement for the 2003-2004 school year during a meeting held on August 25, 2003.  It is uncontested that Plaintiff was never restored to his position as an active teacher with the District.  The record indicates that the District did not take further action against Plaintiff during the 2003-2004 school year because the Pennsylvania State Police was continuing to investigate the claims made against Plaintiff that he touched a student inappropriately.  However, the record also contains evidence indicating that following Plaintiff's placement on administrative leave, the District discovered pornography on the computer in Plaintiff's school

office, was investigating questions regarding financial irregularities relating to the high school band program, and that other students had come forward with statements regarding Plaintiff's alleged inappropriate behavior.[3]

On November 7, 2003, Plaintiff, through his representatives with the Tuscarora Education Association, filed a grievance against the District.  The grievance alleged that the School Board violated a number of provisions of District's collective bargaining agreement by failing to restore Plaintiff to his position as band director by October 27, 2003.[4]  Plaintiff demanded money damages and reinstatement to his former position, among other relief. Although evidence in the record is limited, it appears that the parties were proceeding with arbitration proceedings through July 2004.  In an undated letter, the arbitrator confirmed that the arbitration on Plaintiff's grievance scheduled for July 20, 2004 was being canceled pending continuing discussions between the parties and that the Tuscarora Education Association would bear the costs associated

---

[3]     It appears from the record that certain students and former students made oral statements to District officials during the 2003-2004 school year regarding what they considered to be Plaintiff's inappropriate conduct, and that these statements were formally given under oath on July 20, 2004.  (Doc. No. 57, Exs. 10-14.)

[4]     It is not clear from the record why Plaintiff claimed he should have been restored to his teaching position by October 27, 2003.  The record does indicate, however, that Plaintiff had agreed on August 14, 2003 to be placed on administrative leave without pay pending a criminal investigation, and the record further indicates through Defendant Stapleford's testimony that the criminal investigation was ongoing throughout 2003 and into 2004.  Nothing in the record suggests that the criminal investigation into the allegations lodged against Plaintiff had concluded by the time he filed the grievance on November 7, 2003.

with canceling the arbitration. (Doc. No. 57, Ex. 6.)[5]

On June 28, 2004, the District, through the School Board, issued Plaintiff a Statement of Charges and Notice of Hearing that set forth grounds for terminating Plaintiff's employment, including, inter alia, sexual harassment of a co-worker, accessing pornographic material via a school computer, telling sexually suggestive and obscene jokes in the presence of students, inappropriately touching female students, and making inappropriate comments of a sexual nature about students. (Doc. No. 57, Ex. 4.) Plaintiff received the Statement of Charges and Notice of Hearing on June 29, 2004 and was thereby notified that the School Board would hold a hearing on July 14, 2004 and that he had the right to request a hearing within ten days after receipt of the Statement of Charges and Notice of Hearing. Additionally, the Statement of Charges notified Plaintiff that if he did not request a hearing, orally or in writing, he would waive his rights to contest his dismissal. (Id.) Plaintiff did not request a hearing to contest his dismissal, nor did he seek to grieve the dismissal through the Tuscarora Education Association.

Subsequently, on August 9, 2004, the School Board unanimously passed a resolution that recited the charges against Plaintiff, noted that Plaintiff had received notice of the charges against him, and had failed to request a hearing as provided in the Statement of Charges or otherwise to grieve the charges through the teachers' union pursuant to the terms of the collective bargaining agreement. The resolution also states that Plaintiff had been pursuing a grievance against the District, but his representative had canceled the scheduled arbitration. In accordance with that resolution, Plaintiff was terminated from his employment with the District

---

[5]     In Defendants' statement of undisputed facts, they assert that the arbitration was canceled at the request of Plaintiff's representative. (Doc. No. 56, ¶ 23.) Plaintiff admitted this fact as true. (Doc. No. 65 at 1.)

effective August 9, 2004.

**III.     Standard of Review**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The nonmoving party receives the benefit of all reasonable inferences. Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

**IV.      Discussion**

As noted above, Plaintiff has asserted a number of claims against the Defendants. Plaintiff's central claim is that Defendant Stapleford and the District violated his procedural due process rights in connection with the August 12, 2003 meeting during which he was advised that he had 24 hours to resign from his position or face termination.  Plaintiff consistently refers to this initial meeting as a "de facto termination hearing," and contends that as a result of the meeting he was effectively terminated from a tenured job, in which he had a protectible property interest, without due process.  In addition, Plaintiff has claimed certain Defendants violated his liberty interest in his reputation, which he asserts represents an additional due process violation. In addition to the foregoing due process claims, Plaintiff has also alleged that certain of the Defendants conspired together to defame Plaintiff and tortiously interfere with his employment contract.  Finally, Plaintiff has claimed that Defendants Stapleford and Beaumont defamed him, and that Defendants breached a collective bargaining agreement.  The Court will address Plaintiff's claims in seriatim, beginning with his due process claims.

**A.      Procedural Due Process**

Plaintiff has asserted two separate procedural due process claims against certain of the Defendants.  First, Plaintiff has claimed that Defendants Stapleford, the School Board, and the School District violated his procedural due process by suspending and terminating his employment without due process.  Second, Plaintiff claims that the Defendants have violated his liberty interest in his reputation, an additional due process claim.  These allegations will be addressed separately.

i.      **Property Interest in Employment**

Plaintiff contends that the August 12, 2003 meeting in Defendant Stapleford's office during which he was notified of the charges against him and directed to choose within 24 hours whether to resign his position as a teacher or face termination, represented a denial of procedural due process.  Plaintiff argues that he was entitled to what is commonly referred to as a Loudermill hearing before he could be suspended or terminated.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).  Plaintiff further argues that the meeting with Defendant Stapleford constituted a "de facto termination hearing," which effectively ended his employment with the District.[6]  Defendants argue that the meeting with Dr. Stapleford provided Plaintiff with all the process due under Loudermill, and that the hearing was not, in fact, a termination hearing but merely provided Plaintiff with two choices as to how he would respond to the charges against him: resign or be terminated.  Defendants further agree with Plaintiff that Defendant Stapleford had no authority to terminate Plaintiff's employment, and that such an employment action could be effected only through majority vote of the School Board.

As an initial matter, the Court must consider whether Plaintiff had a property interest in his employment with the District.  In order to have a property interest in one's employment, an

_____

[6]      Plaintiff repeatedly refers to the August 12, 2003 meeting as a "de facto termination hearing."  In this Court's prior Order granting in part and denying in part Defendants' motion to dismiss, the Court accepted as true Plaintiff's allegations regarding the nature of the August 12 meeting, and noted that if the meeting were as Plaintiff described, it could be construed as a de facto termination hearing.  The Court underscores that it has never found that the August 12 meeting was, in fact, a de facto termination hearing.  Moreover, as discussed further herein, the evidence of record does not support Plaintiff's claims that he was effectively terminated during this hearing, and the record further indicates that two days after this initial meeting Plaintiff voluntarily agreed to be placed on administrative leave pending a criminal investigation, and that the District provided Plaintiff with a notice of a termination hearing in June 2004, in which he declined to exercise his right to participate.

individual must "have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law . . . .'" Loudermill, 470 U.S. at 538 (quoting Roth, 408 U.S. at 577). An employment agreement may establish a protected property interest under the Fourteenth Amendment if the contract includes a provision that the state entity can only terminate the employment "for cause." Linan-Faye Const. Co., Inc. v. Hous. Auth., 49 F.3d 915, 932 (3d Cir. 1995). Under Pennsylvania law, school districts may not terminate professional employees, such as Plaintiff, except for specific enumerated causes. 24 P.S. § 11-1122. Additionally, Plaintiff has averred, and Defendants do not dispute, that Plaintiff was covered by a collective bargaining agreement that provided he could be terminated only for cause. Accordingly, the Court finds that Pennsylvania law gives Plaintiff a property interest in his former position with the District.

Although Plaintiff had a property interest in not being terminated from his tenure position, it is unclear whether Plaintiff also had a property interest in not being suspended. See Gilbert v. Homar, 520 U.S. 924, 929 (1997) (recognizing that the Supreme Court has "not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination[,]" but nevertheless "assum[ing] that the suspension infringed a protected property interest" because the petitioners did not contest the issue). But cf. Gniotek v. City of Philadelphia, 808 F.2d 241, 244 n.5 (3d Cir. 1986) (finding that for police officers, under Pennsylvania law and their collective bargaining agreement, "suspensions, like dismissals are only proper when for just cause . . . ."). Unlike termination, suspension of a teacher without cause is not statutorily prohibited. See Kaplan v. School Dist. of

Philadelphia, 388 Pa. 213, 217 (1957) (finding that § 11-1124 is limited to suspensions of staff due to "overstaffing of teachers, curtailment of educational program, or consolidation of schools" and not suspensions due to "incompetency, unfitness, and a disregard of the responsibility the plaintiff owed to his profession and the school system").

In the case at bar, the record contains evidence demonstrating that Defendant Stapleford provided Plaintiff with two options: resign his position voluntarily, or face termination proceedings.  Addtionally, Defendant Stapleford advised Plaintiff if he did not resign, he would be placed on administrative leave pending an investigation into his alleged conduct and that he should not report to work at the beginning of the school year.  The record does not indicate that Plaintiff elected to resign, nor does the record support Plaintiff's claims that he was effectively terminated during this meeting.  Instead, the record demonstrates that two days following Plaintiff's meeting with Defendant Stapleford, his attorney notified the District that Plaintiff would agree to be placed on administrative leave without pay pending the results of a criminal investigation into certain charges against him in order that he could avoid being placed in the position of having to discuss the charges against him.  Plaintiff's counsel's letter of August 14, 2003 states, in relevant part, as follows:

> Given the existence of an ongoing investigation by the police, our office has advised Mr. Wagner that he should not discuss the facts of his situation with anyone at this time, including representatives of the School District.  I recognize that this places the School District in a difficult position with regard to the position occupied by Mr. Wagner, especially given the impending start of school within a few days.  In order to provide a temporary solution to what is admittedly a difficult problem for all concerned, Mr. Wagner has authorized me to request that the School District place him on administrative leave without pay during the pendency of the police investigation into his conduct, and the resolution

12

> of any potential charges that may arise as the result of that
> investigation.

(Doc. No. 57, Ex. 2.)  The letter also offers that Mr. Wagner would not make any claim for back pay for any period he was on administrative leave without pay pursuant to the agreement; that Mr. Wagner would remain on administrative leave if he were charged with committing a crime; that Mr. Wagner would resign if he were found guilty of a criminal charge that precluded his continued employment; and that if he were not charged or convicted, the District would "retain all rights that it currently has to impose discipline on Mr. Wagner for school related conduct." (Id.)  Nothing in the record suggests that the District rejected Plaintiff's proposal, and Defendant Stapleford's testimony indicates that although the District became increasingly convinced of the need to terminate Plaintiff's employment, the District refrained from undertaking any further process to terminate Plaintiff or hold hearings during the criminal investigation that appears to have remained active through the remainder of 2003 and into 2004.

Accordingly, although the record taken in the light most favorable to Plaintiff indicates that Dr. Stapleford advised Plaintiff that he would be suspended from his teaching duties at the beginning of the school year if he chose not to resign from his teaching position, the record clearly indicates that Plaintiff, through advice of his counsel, voluntarily agreed to unpaid administrative leave in light of a criminal investigation into his conduct.  In contrast to this evidence, the Court finds that Plaintiff has failed to come forward with evidence to support his

claim that the District's suspension of his teaching duties constitutes a due process violation.[7]

Moreover, the evidence does not support Plaintiff's characterization of that meeting as a "de facto termination hearing" because Plaintiff was not, in fact, terminated as a result of the meeting. The evidence submitted demonstrates that following consultation with legal counsel, Plaintiff agreed to be placed on administrative leave without pay during the pendency of a criminal investigation in order that he be able to avoid having to discuss the charges with the District or otherwise face a hearing while the State Police investigation was ongoing. Plaintiff has presented no evidence to the contrary. Furthermore, the documentary evidence submitted indicates that in June 2004, the District took steps to notify Plaintiff formally of the charges against him and that the District was seeking to terminate his employment, and to inform him of his due process right to challenge the proposed termination. It was not until after Plaintiff failed to request a hearing before the School Board or otherwise prosecute a grievance through the teachers' union and effectively waived his procedural rights that the District finalized Plaintiff's termination. The Court finds no contrary evidence in the record to support Plaintiff's claims that the August 12, 2003 meeting was a "de facto termination hearing" that was conducted without due process.

Plaintiff also appears to argue that his actual termination, which was effective August 9,

---

[7]       Even had Plaintiff not agreed to be placed on administrative leave, Defendant Stapleford was not attempting to suspend Plaintiff without any notice or opportunity to answer the charges. The hearing with Defendant Stapleford on August 12, 2003, although brief, was held with representatives of the Tuscarora Education Association, and Plaintiff was provided with general factual basis for the charges, including certain factual details relevant to the accusations. Although Plaintiff was not provided the names of his accusers or given the opportunity to confront them, the Court does not find that more process than was provided would have been required prior to a suspension.

2004, violated his procedural due process rights.[8]   To the extent Plaintiff is claiming that the District did not provide him with pre-termination due process in connection with his ultimate termination, the Court must disagree because the record demonstrates that the District provided Plaintiff with notice of the charges against him and an opportunity to be heard.  The undisputed evidence of record shows that Plaintiff neither responded to the written charges provided him, nor requested a hearing to challenge the charges.

Due process "fundamentally requires that the individual be given an opportunity for a hearing <u>before</u> [he] is deprived of [his] property interest.  This principle requires some kind of hearing prior to discharge."  <u>Barkauskie v. Indian River Sch. Dist.</u>, 951 F. Supp. 519, 533 (D. Del. 1996) (emphasis in original) (internal citations removed).  The purpose of the pre-termination hearing is to "provide an initial check against mistaken decisions and a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  <u>Id.</u>  Pre-deprivation due process is satisfied if, prior to the deprivation, a public employee is given: (1) written or oral notice of the charges; (2) an adequate explanation of the evidence; and (3) an adequate opportunity to present his side of the story.  <u>McDaniels v. Flick</u>, 59 F.3d 446, 454 (3d Cir. 1995).  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."  <u>Loudermill</u>, 470 U.S. at 546.

---

[8]       To some extent, Plaintiff's argument that his ultimate termination violated due process is predicated on his central claim that the initial August 12, 2003 hearing before Defendant Stapleford was a sham and operated as a de facto termination.  Because the Court has already found that the record lacks evidence to support this claim, and has found record evidence demonstrating that Plaintiff was not terminated as a result of this meeting, the Court must disagree with Plaintiff's argument in this regard.

Notice is sufficient if it apprises the employee of the nature of the charges and general evidence against him and if it is timely under the particular circumstances of the case. <u>Gniotek</u>, 808 F.2d at 244 (citing <u>Loudermill</u>, 470 U.S. at 546).  Advanced notice is not required, so long as the timing of the notice does not prevent the employee from presenting his side of the story. <u>Id.</u> at 244-45.  "[T]he timing and content of the notice . . . will depend on appropriate accommodation of the competing interests involved[,]" such as the employer's interest in quickly removing an unsatisfactory employee and the employee's interest in retaining employment. <u>Goss v. Lopez</u>, 419 US. 565, 579 (1975).  "[P]retermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee 'the opportunity to determine what facts, in any, within his knowledge might be presented in mitigation of or in denial of the charges.'" <u>McDaniels</u>, 59 F.3d at 457 (quoting <u>Gniotek</u>, 808 F.2d at 244).

The evidence submitted indicates that on June 28, 2004, the District sent Plaintiff a Statement of Charges and Notice of Hearing.  The evidence further shows that Plaintiff received the document on June 29, 2004.  The Statement of Charges set forth numerous bases for dismissal, together with fifteen enumerated examples or types of misconduct that Plaintiff was charged with committing during the 2001-2003 school years.  The examples of misconduct identified in the Statement of Charges included, <u>inter</u> <u>alia</u>, specific examples of sexual harassment of "a female music teacher," the discovery of obscene and pornographic material on the computer Plaintiff used at James Buchanan High School, and general examples of inappropriate conduct and comments made by Plaintiff in front of students.

The Statement of Charges advised Plaintiff that the District had scheduled a hearing for

July 14, 2004 to address the charges, and also advised Plaintiff that he had until July 9, 2004 to request a hearing before the School Board, as was his right under relevant Pennsylvania statutes. The Statement of Charges advised Plaintiff that he had the right to be represented by counsel; the right to hear witnesses and evidence and to cross-examine witnesses; the right to present witnesses and testimony on his behalf; the right to have a public or private hearing; and "[a]ll other rights guaranteed . . . by the Constitution and applicable law."  (Doc. No. 57, Ex. 4.)

Despite having received this notice, it is undisputed that Plaintiff did not request a hearing as required by the Statement of Charges, and it is undisputed that Plaintiff did not challenge the Statement of Charges before the School Board or through applicable grievance procedures.  Accordingly, the evidence of record indicates not only that Plaintiff was provided sufficient notice of the charges against him that were asserted grounds for dismissal and notice of the right to have a hearing to contest the charges, but also that Plaintiff failed to take steps to exercise his due process rights.  The Court thus finds that Plaintiff has failed to come forward with contrary evidence to support his claim that the termination proceedings initiated by the District violated his procedural due process rights.

### ii.    Deprivation of Liberty Interest without Due Process

Plaintiff also claims that Defendants deprived him of a liberty interest in his professional reputation without due process.  A claim for defamation is actionable under 42 U.S.C. § 1983 "only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."  Clark v. Township of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul v. Davis, 424 U.S. 693, 701-702 (1976)).  Thus, in order to make out a claim for a violation of a liberty interest in reputation, Plaintiff must show a stigma to his

reputation plus some accompanying infringement of a protected right or interest. <u>See</u> <u>Paul</u>, 424 U.S. at 701 (finding that although not every defamation by a public official will constitute a deprivation of liberty subject to constitutional protection, stigma to reputation, together with an impact on "tangible interests, such as employment" may require due process protection); <u>Ersek v. Township of Springfield</u>, 102 F.3d 79, 83 n.5 (3d Cir. 1996). Courts have referred to this as the "reputation plus" or "stigma plus" requirement. <u>Graham v. City of Philadelphia</u>, 402 F.3d 139, 142 n.2 (3d Cir. 2005); <u>Ersek</u>, 102 F.3d at 83 n.5. Accordingly, although injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment, stigma to reputation accompanied by a deprivation of present or future employment may be a liberty interest requiring due process protection.[9] <u>Robb v. City of Philadelphia</u>, 733 F.2d 286, 294 (3d Cir. 1984).

Once a plaintiff has shown "reputation plus," he must also show that the provided notice and opportunity to be heard were inadequate to satisfy the requirements of due process. Thus, individuals must be given an opportunity to refute the charges alleged against them at a "name-clearing" hearing. <u>Graham</u>, 402 F.3d at 144. In <u>Liotta v. Borough of Springdale</u>, 985 F.2d 119 (3d Cir. 1993), a borough administrator was accused of stealing borough funds. The borough council held a hearing to determine whether to discipline him, during which the administrator was free to testify and call witnesses. Following the hearing, the borough council voted to terminate his employment. In reviewing the defamation claim brought by the administrator against the council members and the borough itself, the Third Circuit found that the hearing

---

[9] Plaintiff's loss of property rights in his employment is enough to satisfy the "plus" requirement. <u>Graham</u>, 402 F.3d at 142 n.2 (the "plus" is generally termination of employment).

provided the administrator a name-clearing forum and was all "the process he was due."  Liotta,

985 F.2d at 123.  See also Demko v. Luzerne County Cmty. Coll., 113 F. Supp. 2d 722, 734

(M.D. Pa. 2000) (finding that "[a] pre-deprivation hearing that satisfies the requirement of

Loudermill is adequate" for purposes of a name-clearing hearing).

In addition the lack of evidence to support Plaintiff's claim that the disciplinary process

utilized during the August 12, 2003 meeting with Dr. Stapleford or his ultimate termination by

the School Board violated his procedural due process, Plaintiff also has failed to demonstrate

with evidence that any of the Defendants' actions constitute defamation under Pennsylvania law.

In his statement of undisputed facts, Plaintiff states that Defendant Stapleford spoke "to the wife

of a reporter for the Public Opinion Newspaper about Mr. Wagner on or about August 2003."

(Doc. No. 66, ¶ 16.)  Upon review of the evidence Plaintiff relies upon to support his claim that

Dr. Stapleford defamed him by speaking with the spouse of a reporter – who was also a parent to

a band member – the evidence indicates only that Dr. Stapleford acknowledged speaking to this

parent "regarding Mr. Wagner's due process rights and some of the outline of what happens in a

dismissal process."  (Stapleford Dep., Ex. 4.)  Additionally, Plaintiff claims that "Defendant

Stapleford had spoken to the band and band parents the day after the de facto termination hearing

(and he spoke to a newspaper reporter the day after the hearing and was 'shocked' at how much

information they had)."  (Id. ¶ 17.)  This evidence does not demonstrate that Defendants defamed

him, or were responsible for news of the District's investigation or for news of Plaintiff's

suspension becoming public.  Finally, Plaintiff asserts that a parent of one of the band students

was a writer for a local newspaper, and that Dr. Stapleford was aware of this parent's position at

the paper.  (Id. ¶ 18.)  Plaintiff has acknowledged that he had no personal knowledge that Dr.

Stapleford or any other Defendant was responsible for the publicity of his suspension or the investigation into allegations regarding his conduct.  (Pl. Dep., pp. 60-61.)  The Court finds an absence of evidence supporting Plaintiff's claims that any of the Defendants defamed him or violated his liberty interest in his reputation.

Even assuming that Plaintiff had come forward with evidence to support his claim for defamation, Plaintiff was afforded more than one name-clearing hearing and therefore cannot maintain his due process claim.  The evidence of record indicates only that Plaintiff was given a brief initial meeting with Dr. Stapleford and apprised of certain allegations against him during which he was provided an opportunity to answer the charges.  The evidence also indicates that Plaintiff initiated a grievance procedure, which he subsequently abandoned.  Finally, the evidence indicates that Plaintiff was afforded notice of numerous charges against him, and was notified of his right to a hearing to challenge the proposed dismissal, which he elected to forego. The Court must find that Plaintiff has not presented evidence to support his claim that Defendants violated his due process liberty interest in his reputation and summary judgement will be granted in favor of Defendants on this claim.

### B.      Pendent State Law Claims

#### i.      Civil Conspiracy

In order to prove a civil conspiracy, a plaintiff must show that: (1) two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means; (2) an overt act taken in pursuit of a common conspiratorial purpose; and (3) actual legal damages.  Goldstein v. Phillip Morris, 854 A.2d 585, 590 (Pa. Super. Ct. 2004). Additionally, a claim of civil conspiracy cannot be pled without alleging an underlying tort.

<u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 405-06 (3d Cir. 2000).  Finally, a plaintiff must prove malice on the part of the alleged conspirators.  <u>Burnside v. Abbot Labs</u>., 505 A.2d 973, 980 (Pa. Super. Ct. 1985).

Plaintiff alleged that Defendants met among themselves and agreed to defame Plaintiff by reporting baseless allegations of sexual harassment, which they knew to be substantially and materially false.  The evidence of record demonstrates not only that Defendants were concerned about allegations that Plaintiff had subjected a fellow teacher to sexual harassment in the workplace, but also by growing evidence that Plaintiff's conduct towards several students was inappropriate.  Plaintiff complains that Defendants' charges against him were baseless, but this argument is belied by five sworn statements taken from Plaintiff's former students, as well as a formal complaint about Plaintiff's conduct given by Defendant Tharp regarding charges of sexual harassment.  In contrast to this evidence, the Court finds that Plaintiff has failed to submit evidence to support his conspiracy claims against the Defendants.

> **ii.     Defamation**

In order to state a claim for defamation, a plaintiff must demonstrate: (1) the defamatory character of a communication; (2) its publication by the defendant; (3) its application to plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa. C.S.A. § 8343(a); <u>Smith v. Wagner</u>, 588 A.2d 1308, 1311 (Pa. Super. Ct. 1991).

Plaintiff alleged that Defendants Beaumont and Stapleford defamed him by giving statements to local newspapers, which were published, that represented falsely that he had

sexually harassed students.  As noted above, Plaintiff has not supported this allegation with evidence that either of these Defendants published false information.  Indeed, the evidence indicates only that Defendant Stapleford discussed with parents and other interested persons the circumstances surrounding Plaintiff's suspension, the investigation into the charges, and the due process procedures that attend the disciplining of a teacher.  Plaintiff's allegations of defamation alone are insufficient to withstand summary judgment.

### iii.    Tortious Interference With Contract

Under Pennsylvania law, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." Judge Tech. Servs., Inc. v. Clancy, 813 A.2d 879, 887 (Pa. Super. Ct. 2002) (original emphasis removed).  In order to prove a claim for intentional interference with contract, a plaintiff must demonstrate: (1) the existence of a contractual relationship; (2) the defendant's intent to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege for such interference; and (4) damages resulting from the defendant's actions.  Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998); Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. Ct. 1993).

Critical to the right of recovery under the theory of tortious interference is the existence of a contractual relationship between Plaintiff and a party other than the Defendants.  Killian v. McCulloch, 850 F. Supp. 1239, 1251 (E.D. Pa. 1994); Nix v. Temple University, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991).  A corporation cannot tortiously interfere with a contract to which it

is a party.  Nix, 596 A.2d at 1137.  Since a corporation acts through its agents and officers, such agents and officers cannot be considered third parties when they are acting in their official capacities.  Id.; see also Avins v. Moll, 610 F. Supp. 308, 318 (E.D. Pa. 1984) (holding that the overwhelming weight of authority is that a corporate officer is not personally liable for tortious interference).  "The only exception arises if the officer's sole motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest."  Killian, 850 F. Supp. at 1252 (emphasis in original); see also Avins, 610 F. Supp. at 318.  However, the mere fact that an employer was acting with allegedly improper motive does not remove their actions from the scope of their employment.  Emerson Radio Corp. v. Orion Sales, 253 F.3d 159, 173-174 (3d Cir. 2001).

In this case, Plaintiff has failed to identify a third party who is alleged to have violated the contract at issue, namely the collective bargaining agreement between the District and the Tuscarora Education Association.  Under the terms of the collective bargaining agreement, Defendants Tharp and Smith, and Plaintiff, are all members of the unit of professional employees who are subject to the agreement.  The remaining Defendants are either District employees or agents, or members of the Defendant School Board.  The Court does not find evidence that a third party, not subject to the collective bargaining agreement or otherwise an agent of the District, induced a contracting party not to perform under the collective bargaining agreement.

The record is also devoid of evidence supporting Plaintiff's allegations that any of the Defendants intended to harm Plaintiff by maliciously interfering with his rights under the collective bargaining agreement.  The evidence submitted by the parties demonstrates Defendants were concerned about serious allegations that Plaintiff had sexually harassed a

colleague and had touched students inappropriately.  Plaintiff has not pointed to evidence to the

contrary, and Plaintiff has not come forward with evidence suggesting that any of the Defendants

acted solely with malice in investigating the charges against him or pursuing termination of his

employment.  In sum, the Court finds that Plaintiff has failed to support through adequate

allegations or supporting evidence a viable claim for intentional interference with contractual

relations under Pennsylvania law.

### iv.     Breach of Contract

To sustain a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1)

the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant

damages.  J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super.

Ct. 2002).  Additionally, under Pennsylvania law, where a collective bargaining agreement

contains an arbitration provision, parties must arbitrate contractual grievances.  Cohen v. Temple

Univ., 445 A.2d 179, 182 (Pa. Super. Ct. 1982).

In this case, the collective bargaining agreement at issue contains specific grievance

procedures governing disputes over the meaning or application of the collective bargaining

agreement.  (Doc. No. 57, Ex. 15, §§ 10.1-10.8.)  Although Plaintiff initially grieved the failure

of the District to restore him to his position as band director, he abandoned that particular

grievance when his representative canceled the scheduled arbitration, and no evidence indicates

the Plaintiff sought to revive the grievance.  Similarly, Plaintiff has presented no evidence that

he sought to grieve any other alleged breach of the collective bargaining agreement by the

District or its representatives.  Because the collective bargaining agreement contained a

grievance procedure that Plaintiff failed to exercise, and because the Court finds no evidentiary

support for Plaintiff's claim that Defendants' conduct rendered the collective bargaining agreement null and void, the Court finds that Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

**V.      Conclusion**

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's remaining claims.  An appropriate order follows this opinion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRED WAGNER,** | : | |
| | : | **Civil Action No. 1:04-CV-1133** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **TUSCARORA SCHOOL DISTRICT,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

And now, this 19th day of January 2006, for the reasons stated in the within

memorandum, **IT IS HEREBY ORDERED THAT:**

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 52) is **DENIED**.

2.      Defendants' Motion for Summary Judgment (Doc. No. 54) is **GRANTED**.

3.      All pending motions in limine (Doc. Nos. 73, 75, 85, 90, 91, 92) are **DENIED** as moot.

4.      The Clerk of Court is directed to enter judgment in favor of Defendants on all remaining claims and to close the file.


___S/ Yvette Kane_____
Yvette Kane
United States District Judge